******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

ROBINSON, C. J., with whom MULLINS, J., joins, concurring. I agree with the majority's conclusion that, given the severe nature of the crime under investigation, New Haven police officer Milton DeJesus had reasonable suspicion that the defendant, Demetrice L. Lewis, might be armed and dangerous, which provided an objective justification for his decision to frisk the defendant while conducting a *Terry* stop.[1] I write separately only to emphasize an important observation that I fear may be lost in the sheer comprehensiveness of the majority's well reasoned opinion, namely, our express disapproval of Officer DeJesus' stated practice of patting down "everybody . . . for my safety." Accordingly, I join with and highlight the majority's agreement with the Appellate Court's "disapprov[al] of such a practice as presenting a high risk of being an unconstitutional intrusion, saved, perhaps, only by the operative facts of any such police-public interaction." *State* v. *Lewis*, 173 Conn. App. 827, 849 n.6, 162 A.3d 775 (2017).

While I am deeply sensitive to law enforcement officers' concerns for their safety, it is black letter constitutional law that a law enforcement officer may not frisk or pat down even a validly stopped person in the absence of an objective, reasonable suspicion that the person may be armed and dangerous.[2] See, e.g., *Arizona* v. *Johnson*, 555 U.S. 323, 327, 129 S. Ct. 781, 172 L. Ed. 2d 694 (2009); *Pennsylvania* v. *Mimms*, 434 U.S. 106, 112, 98 S. Ct. 330, 54 L. Ed. 2d 331 (1977); *Terry* v. *Ohio*, 392 U.S. 1, 26–27, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *United States* v. *Lopez*, 907 F.3d 472, 485–86 (7th Cir. 2018); *Floyd* v. *New York*, 959 F. Supp. 2d 540, 568–69 (S.D.N.Y. 2013); *State* v. *Clark*, 255 Conn. 268, 281–82, 764 A.2d 1251 (2001); *State* v. *Wilkins*, 240 Conn. 489, 495–96, 692 A.2d 1233 (1997). Accordingly, a police officer's practice of indiscriminately frisking people without the requisite objective justification to do so constitutes a serious violation of the fourth amendment to the United States constitution that contributes to the erosion of the trust between our citizens and law enforcement officers.

As I noted in my concurring opinion in *State* v. *Edmonds*, 323 Conn. 34, 85, 145 A.3d 861 (2016), such practices, "[b]y sowing fear and distrust of police . . . could ultimately make high crime areas even less safe for the people who live there." Such " '[u]ndemocratic policing . . . increases the perception of illegitimacy, which in turn can increase levels of crime and reduce police-citizen cooperation.' . . . Instead 'individuals are more likely to voluntarily comply with the law when they perceive the law to be legitimate and applied in a nondiscriminatory fashion.' "[3] (Citation omitted.) Id., 85–86 (*Robinson, J.,* concurring), quoting I. Bennett

Capers, "Rethinking the Fourth Amendment: Race, Citizenship, and the Equality Principle," 46 Harv. C.R.-C.L. L. Rev. 1, 34, 47 (2011). In my view, "the dehumanizing nature of some of these encounters" between citizens and the police is particularly exacerbated by an unjustified frisk;[4] *State* v. *Edmonds*, supra, 84 (*Robinson, J.*, concurring); and I urge our police officers, and particularly those who employ and supervise them, to take all steps appropriate to ensure that interactions between law enforcement and the citizens of our state remains within constitutional bounds.

Although I find Officer DeJesus' apparent standard procedure of frisking "everyone" to be extraordinarily troubling, I nevertheless agree with the majority's conclusion that Officer DeJesus' stop and frisk of the defendant in the present case was independently and objectively supported by a reasonable suspicion that he had just committed a domestic violence crime. Accordingly, I join in the majority's excellent opinion affirming the judgment of the Appellate Court.

[1] *Terry* v. *Ohio*, 392 U.S. 1, 30–31, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

[2] I note that, "[w]hen conducting a patdown search of a suspect, the officer is limited to an investigatory search for weapons in order to ensure his or her own safety and the safety of others nearby. . . . The officer cannot conduct a general exploratory search for whatever evidence of criminal activity [he or she] might find. . . . Logically, therefore, a patdown search for weapons that is justified at its inception becomes constitutionally infirm if the search . . . becomes more intrusive than necessary to protect the safety of the investigating officer. . . .

"In order to determine the constitutional validity of [a] patdown search . . . we must consider if [b]ased upon the whole picture the detaining officers [had] a particularized and objective basis for suspecting the particular person stopped of criminal activity. . . . [We] . . . must therefore examine the specific information available to the police officer at the time of the initial intrusion and any rational inferences to be derived therefrom. . . . This is, in essence, a totality of the circumstances test." (Citations omitted; internal quotation marks omitted.) *State* v. *Clark*, 255 Conn. 268, 282–83, 764 A.2d 1251 (2001); see, e.g., id., 284–86 (describing factors providing objectively reasonable basis for frisk of defendant, including connection between narcotics trade and weapons, visible nervousness in dealing with police officers, and evidence confirming his connection to narcotics trafficking under investigation).

[3] As I explained in my concurring opinion in *Edmonds*: "Suspicionless stops are not only a violation of an individual's constitutional rights, they often breed fear and distrust toward police, which, in my view, is an additional unacceptable burden to place on the shoulders of citizens living in high crime areas. . . . As Justice Stevens of the United States Supreme Court has emphasized [in his concurring and dissenting opinion in *Illinois* v. *Wardlow*, 528 U.S. 119, 134 n.10, 120 S. Ct. 673, 145 L. Ed. 2d 570 (2000)], some citizens, 'particularly minorities and those residing in high crime areas,' flee from police even when they are entirely innocent, believing that any contact with the police can be dangerous. . . . He further noted that these fears 'are validated by law enforcement investigations into their own practices' and that the evidence supporting the reasonableness of these fears 'is too pervasive to be dismissed as random or rare, and too persuasive to be disparaged as inconclusive or insufficient.' . . . Intuitively, when citizens avoid and actively refuse to interact with police out of fear of becoming a suspect, the opportunities for positive dialogue between the police and citizens disappear. This means that the police will also miss out on learning important information related to actual criminal activity in those communities." (Citations omitted.) *State* v. *Edmonds*, supra, 323 Conn. 83–84 (*Robinson, J.*, concurring).

[4] Justice Sotomayor of the United States Supreme Court describes how dehumanizing and degrading a stop and frisk may be in her dissenting opinion in *Utah* v. *Strieff*, U.S. , 136 S. Ct. 2056, 2069–70, 195 L. Ed.

2d 400 (2016), observing that: " 'Although many Americans have been stopped for speeding or jaywalking, few may realize how degrading a stop can be when the officer is looking for more. . . . The indignity of the stop is not limited to an officer telling you that you look like a criminal. . . . The officer may next ask for your consent to inspect your bag or purse without telling you that you can decline. . . . Regardless of your answer, he may order you to stand helpless, perhaps facing a wall with [your] hands raised. . . . If the officer thinks you might be dangerous, he may then frisk you for weapons. This involves more than just a pat down. As onlookers pass by, the officer may feel with sensitive fingers every portion of [your] body. A thorough search [may] be made of [your] arms and armpits, waistline and back, the groin and area about the testicles, and entire surface of the legs down to the feet.' . . . As such, the United States Supreme Court has acknowledged that '[i]n many communities, field interrogations are a major source of friction between the police and minority groups.' . . . When police routinely 'stop and question persons on the street who are unknown to them, who are suspicious, or whose purpose for being abroad is not readily evident,' according to the court, such interactions 'cannot help but be a severely exacerbating factor in police-community tensions.' " (Citations omitted.) *State* v. *Edmonds*, supra, 323 Conn. 84–85 (*Robinson, J.*, concurring).

---